IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| BEATRICE SHIRLEY WILLIAM STEELE,<br><br>Plaintiff,<br><br>vs.<br><br>MUTUAL OF OMAHA INSURANCE COMPANY, ROBERT GRANT, and DIANA M. WHITE,<br><br>Defendants. | **8:24CV300**<br><br>**MEMORANDUM AND ORDER** |

Plaintiff Beatrice Shirley William Steele filed her Complaint, Filing No. 1, on June 5, 2024, in the United States District Court for the Southern District of New York, and the case was transferred to this Court on July 31, 2024, *see* Filing Nos. 2 & 3. Plaintiff has been given leave to proceed in forma pauperis. Filing No. 9. The Court now conducts an initial review of Plaintiff's Complaint to determine whether summary dismissal is appropriate under 28 U.S.C. § 1915(e)(2).

### I. SUMMARY OF COMPLAINT

Plaintiff, a citizen of New York, brings this suit alleging the defendants violated 41 U.S.C. § 6503 regarding "Public Contract." Filing No. 1 at 2. Plaintiff names as defendants Mutual of Omaha Insurance Company ("Mutual") located in Omaha, Nebraska; Robert Grant ("Grant"), a "Select Quote Insurance Services" agent located in San Francisco, California; and Diana M. White ("White"), a "Claims Analyst" who works at Mutual's Omaha office. *Id.* at 3–4.

The following facts are drawn from the Complaint and its attachments.[1] In December 2023, Plaintiff signed up for an insurance policy that she alleges covered critical illness with a rider for heart attack and stroke benefits. *Id.* at 5, 8, 11–13. The application for the insurance policy includes the defendant Grant's electronic signature and lists him as the "producer." *Id.* at 12. Plaintiff filed a claim in January 2024, after learning that she had "a second tumor that needed gamma ray surgery." *Id.* at 8 (spelling corrected). After Mutual spent five months reviewing Plaintiff's medical records, Mutual denied her claim because Plaintiff does not have cancer. Plaintiff agrees she does not have cancer, but she does "have a critical illness" for which she claims she has coverage. *Id.* at 5.

Liberally construed, Plaintiff had two phone calls regarding Mutual's denial of her claim on June 4, 2024, and June 5, 2024. *Id.* Plaintiff spoke with one of the defendants, likely White,[2] who informed Plaintiff "that I didn't include that I have heart disease that was one reason for denial which I don't have." *Id.* Plaintiff further contends that the application White

> sent me for reason of being denied didn't have any marks besides critical illness nor were pages on the second application filled out either. Then she states had they know this it would have been terminated. Had they had a phone call to establish the insurance policy [illegible] to listen they would hear clearly I answered correctly all questions and he then approved and they have been collecting insurance payments monthly.

*Id.* at 6.

---

[1] The Court quotes from the hand-written portions of the Complaint verbatim. All spelling, grammar, and punctuation are as in the original unless otherwise noted.

[2] Plaintiff refers to this defendant as "she." *See* Filing No. 1 at 5–6. The two individual defendants are Diana White and Robert Grant. The Court assumes for the purpose of this order that Plaintiff spoke with White.

Attached to the Complaint is a letter written by White and dated June 4, 2024, informing Plaintiff of Mutual's denial of her claim. *Id.* at 26–28. White states that Mutual's investigation of Plaintiff's claim revealed she had past medical history related to her brain tumors and heart disease, but Plaintiff answered "no" to two questions in her insurance application regarding past diagnoses, treatment, or testing "for which a medical professional has not ruled out cancer" and "for any disease, disorder or abnormality of the heart or blood vessels." *Id.* at 26, 30. White wrote:

> Based on this information, [Mutual] determined that the answer on the application was answered incorrectly. Had we been aware of these facts at the time the policy and rider was applied for, it would not have been issued. The policy, therefore, is being rescinded. This means it is considered to have never been in force, effective the issue date. A refund of premium will be sent by our Premium Services Department. No claims are payable.

*Id.* at 26. White further informed Plaintiff that her diagnosis related to her brain tumors "does not meet the definition of cancer" because her "medical records did not support any diagnosis of cancer as this is not considered malignant" and, thus, Plaintiff was not entitled to payment for any cancer benefits under her policy. *Id.* at 27. Plaintiff filed an appeal of the denial of her claim on June 4, 2024. *Id.* at 9, 15.

As the Court understands it, Plaintiff contends that the copy of her insurance application sent with White's claim denial letter does not match the copy of the application Plaintiff received in the mail when she first obtained the policy. Specifically, Plaintiff alleges her copy of the application shows she obtained coverage for both cancer and critical illness,[3] *see Id.* at 11–13, while

---

[3] The Court notes that Plaintiff provided only a photo of the first page of her copy of the application, as opposed to a copy of the actual document, which shows an "x" marked next to both "Lump Sum Cancer" and "Lump Sum Critical Illness" in the "Product" section. *See* Filing No. 1 at 11, 13. Interestingly, the instructions for the "Product" section state "[s]elect only one" and the "x" next to the

the copy sent by White does not contain a check mark showing that Plaintiff's policy includes the critical illness coverage, *see Id.* at 29. Plaintiff, thus, asserts she has critical illness coverage and this coverage applies to her claim. *Id.* at 5. As relief, Plaintiff "would like the courts to administer [illegible] my 20,000 policy insurance [illegible] payment and relief of 1 million dollars." *Id.* at 6.

On February 25, 2025, Plaintiff filed correspondence which the Court docketed as a supplement. Filing No. 11. In the supplement, Plaintiff describes issues with dental insurance coverage she obtained in late 2024, and pays for, through her employer and what she believes is a retaliatory denial of benefits under that dental insurance plan. Plaintiff asks the Court to "take this letter into consideration." *Id.* at 2. The Court has reviewed the letter and cannot discern any relevance between its contents and the claims asserted in Plaintiff's Complaint or the defendants named therein. Accordingly, Plaintiff's letter/supplement will not be discussed further.

## II. APPLICABLE LEGAL STANDARDS ON INITIAL REVIEW

The Court is required to review in forma pauperis complaints to determine whether summary dismissal is appropriate. *See* 28 U.S.C. § 1915(e). The Court must dismiss a complaint or any portion of it that states a frivolous or malicious claim, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B).

Pro se plaintiffs must set forth enough factual allegations to "nudge[] their claims across the line from conceivable to plausible," or "their complaint must be dismissed." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569-70 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial

---

selection for "Lump Sum Critical Illness" does not appear identical to the other "x" marks used in the application. *See id*.

4

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

"The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party 'fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.'" *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (quoting *Hopkins v. Saunders*, 199 F.3d 968, 973 (8th Cir. 1999)). However, "[a] pro se complaint must be liberally construed, and pro se litigants are held to a lesser pleading standard than other parties." *Topchian*, 760 F.3d at 849 (internal quotation marks and citations omitted).

### III. DISCUSSION

In evaluating Plaintiff's claims, the Court must determine whether subject-matter jurisdiction is proper. *See* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). Furthermore, a plaintiff must sufficiently state a claim for relief that contains, "a short and plain statement of the grounds for the court's jurisdiction, unless the court has jurisdiction and the claim needs no new jurisdictional support." Fed. R. Civ. P. 8(a)(1). In her Complaint, Plaintiff alleged a breach of contract claim pursuant to 42 U.S.C. § 6503. Filing No. 1 at 2, 8. However, as discussed below, Plaintiff's allegations fail to establish that the Court may properly exercise jurisdiction over Plaintiff's claims.

### A. Federal Question Jurisdiction

Subject-matter jurisdiction is proper where a plaintiff asserts "[a] non-frivolous claim of a right or remedy under a federal statute," commonly referred to as "federal question" jurisdiction. *Northwest South Dakota Prod. Credit Ass'n v. Smith*, 784 F.2d 323, 325 (8th Cir. 1986). The mere suggestion

of a federal question is not sufficient to establish the jurisdiction of federal courts, rather, the federal court's jurisdiction must affirmatively appear clearly and distinctly. *Bilal v. Kaplan*, 904 F.2d 14, 15 (8th Cir. 1990).

Here, Plaintiff alleges a violation of 41 U.S.C. § 6503 as the basis for this Court's federal question jurisdiction. Filing No. 1 at 2. Section 6503 "applies in case of breach or violation of a representation or stipulation included in a contract under section 6502 of this title." 41 U.S.C. § 6503. However, section 6502 contains provisions applicable only to "[a] contract made by an agency of the United States for the manufacture or furnishing of materials, supplies, articles, or equipment, in an amount exceeding $10,000," 41 U.S.C. § 6502, and, thus, has no application to Plaintiff's insurance contract with Mutual. Accordingly, Plaintiff's allegations do not establish that federal question jurisdiction exists in this matter.

### B. Diversity of Citizenship Jurisdiction

Subject-matter jurisdiction may be proper in federal court pursuant to 28 U.S.C. § 1332, commonly referred to as "diversity of citizenship" jurisdiction. For purposes of 28 U.S.C. § 1332, "diversity of citizenship" means that "the citizenship of each plaintiff is different from the citizenship of each defendant." *Ryan v. Schneider Nat'l Carriers, Inc.*, 263 F.3d 816, 819 (8th Cir. 2001) (citation omitted). In addition, the amount in controversy must be greater than $75,000.00 for diversity of citizenship jurisdiction. 28 U.S.C. § 1332(a).

Though Plaintiff did not check the box on her form Complaint indicating diversity of citizenship as a basis for the Court's jurisdiction, *see* Filing No. 1 at 2, Plaintiff alleged that she is a citizen of New York; Mutual is incorporated under the laws of Nebraska and located in Omaha, Nebraska; and Plaintiff alleged a California address for Grant and a Nebraska address for White, *Id.* at 2–4. Liberally construed, then, the citizenship of the parties appears to be

completely diverse for purposes of diversity of citizenship jurisdiction. However, Plaintiff's allegations do not suggest an amount in controversy exceeding $75,000 and, even if they did, the Court would question whether such an amount is legitimate.

Where a complaint "alleges a sufficient amount in controversy to establish diversity jurisdiction, but . . . the court questions whether the amount alleged is legitimate, the party invoking federal jurisdiction must prove the requisite amount by a preponderance of the evidence." *Trimble v. Asarco, Inc.*, 232 F.3d 946, 959 (8th Cir. 2000) (quotation omitted), *abrogated on other grounds by Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546 (2005). In addition, "[n]o presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of the jurisdictional claims." *Id.* (quotation omitted). "A complaint that alleges the jurisdictional amount in good faith will suffice to confer jurisdiction, but the complaint will be dismissed if it appears to a legal certainty that the claim is really for less than the jurisdictional amount," that is "where the legal impossibility of recovery is so certain as virtually to negative the plaintiff's good faith in asserting the claim." *Peterson v. The Travelers Indem. Co.*, 867 F.3d 992, 995 (8th Cir. 2017) (cleaned up).

Here, Plaintiff fails to state any facts or legal theories suggesting why the defendants should be liable to her for an amount exceeding $75,000. Construed liberally, Plaintiff alleges the defendants denied her claim and breached her critical illness insurance policy which provides for a $20,000 lump sum payment. Filing No. 1 at 5–6, 10. Plaintiff further alleges she paid monthly premiums of $52.46 to Mutual for the policy beginning in December 2023 through at least June 2024, when her claim was denied and Mutual indicated

that the policy was being rescinded and her premium refunded. *Id.* at 6, 10, 14, 26. In total, the monetary loss claimed by Plaintiff is well below the required $75,000 amount in controversy.

In addition, though Plaintiff requests "relief of 1 million dollars" in addition to the "20,000 policy insurance . . . payment," *Id.* at 6, she does not allege any facts or legal bases to support an award in such an amount. Liberally construed, Plaintiff's request for $1 million in damages may be a request for punitive damages. However, whether the Court applies Nebraska or New York law,[4] Plaintiff would not be entitled to recover punitive damages on her claims as alleged. First, "[u]nder Nebraska law, 'punitive, vindictive, or exemplary damages contravene Neb. Const. art. VII, § 5, and thus are not allowed in this jurisdiction.'" *O'Brien v. Cessna Aircraft Co.*, 298 Neb. 109, 139, 903 N.W.2d 432, 458 (2017) (quoting *Distinctive Printing & Packaging Co. v. Cox*, 232 Neb. 846, 857, 443 N.W.2d 566, 574 (1989)). Second, under New York law, "punitive damages are generally not recoverable in a breach of contract action, unless the conduct associated with the breach of contract is actionable as an independent tort 'aimed at the public generally' and evincing a 'high degree of moral turpitude and demonstrating such wanton dishonesty as to imply a criminal indifference to civil obligations.'" *Horn v. Toback*, 989 N.Y.S.2d 779, 783 (N.Y. App. Term 2014) (quoting *Rocanova v. Equitable Life Assurance Soc'y of the U.S.*, 634 N.E.2d 940, 943 (N.Y. 1994)). Here, Plaintiff

---

[4] In a diversity case, the Court would apply the choice-of-law rules of Nebraska, the forum state. *Schaffart v. ONEOK, Inc.*, 686 F.3d 461, 475 (8th Cir. 2012) (citing *Ferrell v. W. Bend Mut. Ins. Co.*, 393 F.3d 786, 796 (8th Cir. 2005)); *see also Dubas v. Clark Equip. Co.*, 532 F. Supp. 3d 819, 830 (D. Neb. 2021). Under Nebraska law, "[t]he first step in a conflict-of-law analysis is to determine whether there is an actual conflict between the legal rules of different states." *Johnson v. U.S. Fid. & Guar. Co.*, 696 N.W.2d 431, 436 (Neb. 2005). "An actual conflict exists when a legal issue is resolved differently under the law of two states." *Id*. The Court applies choice of law rules if the Court concludes that "an actual conflict exists." *Id*. at 437. The Court makes no determination at this time whether a conflict exists between Nebraska and New York law regarding punitive damages nor what law should apply if a conflict did exist.

is merely seeking recovery of sums she alleges Mutual was contractually obligated to pay under the terms of the insurance policy. Neither the Complaint nor the attachments thereto contain facts that if proven would establish Plaintiff is entitled to recover punitive damages.

Based on the foregoing, the allegations presented are insufficient to establish that Plaintiff's claims meet an amount in controversy exceeding $75,000. Thus, Plaintiff has failed to demonstrate that subject-matter jurisdiction is proper pursuant to 28 U.S.C. § 1332. On the Court's own motion, Plaintiff will have 30 days in which to file an amended complaint that clearly alleges a factual and legal basis for this Court's jurisdiction.

IT IS THEREFORE ORDERED that:

1. Plaintiff shall have until **July 14, 2025**, to file an amended complaint that clearly sets forth a basis for this Court's jurisdiction. Failure to file an amended complaint within the time specified by the Court will result in the Court dismissing this case without further notice to Plaintiff.

2. In the event that Plaintiff files an amended complaint, Plaintiff shall restate the relevant allegations of the Complaint, Filing No. 1, and any new allegations. Failure to consolidate all claims into one document may result in the abandonment of claims. Plaintiff is warned that an amended complaint will supersede, not supplement, her prior pleadings.

3. The Court reserves the right to conduct further review of Plaintiff's claims pursuant to 28 U.S.C. § 1915(e)(2) in the event she files an amended complaint.

4. The Clerk of the Court is directed to set the following pro se case management deadline: **July 14, 2025**: check for amended complaint.

Dated this 12th day of June, 2025.

BY THE COURT:

_____

John M. Gerrard
Senior United States District Judge